# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONG SEE, | 1:08-cv-00422-LJO-GSA |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## **BACKGROUND**

Plaintiff Tong See ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge, for findings and recommendations to the District Court.

//
//
//
//
//

1

# FACTS AND PRIOR PROCEEDINGS[1]

In April 2005, Plaintiff filed an application alleging disability since November 30, 2004. AR 87-89.  Her applications were denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 67-74, 76-80.  ALJ James P. Berry held a hearing April 30, 2007, and issued an order denying benefits on June 21, 2007.  AR 29-37, 254-274.  Thereafter, on January 11, 2008, the Appeals Council denied review.  AR 20-22.

Hearing Testimony

ALJ Berry held a hearing on April 30, 2007, in Fresno, California.  Plaintiff appeared and testified.  She was represented by Jeffrey Milam.  Interpreter Saysee was present.  Vocational Expert ("VE") Jose Chaparro also testified.  AR 254-274.

Plaintiff was born in Laos, but did not attend school there.  She attended school in the United States for one or two years in order to learn English[2].  She can speak, read and write English "a little bit."  AR 258.  She cannot make a grocery list in English then use it to go grocery shopping.  AR 258.  Plaintiff did not complete the Social Security forms herself.  AR 258.

She is a citizen of this country, having completed the citizenship test in English.  The questions for the citizenship examination were asked orally in English and she responded orally in English.  There was no written component of the examination.  AR 258-259.  She was prepared to answer the questions asked, such as, the number of colors in the nation's flag.  AR 259.  She studied for the examination by learning from an American friend who taught her the information necessary to pass the test.  AR 260.  Her examination may have been "special" because she indicated on the application that she did not speak English well.  AR 260.

Plaintiff has worked in this country, and last worked packaging socks in 1994.  She quit because she could not arrange transportation after she was assigned to the night shift.  AR 260-261.  Plaintiff does not have a driver's license.  AR 258.  She could not perform the job now

---

[1]References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[2]Plaintiff came to the United States in 1991.  AR 266.

1   because she has "trouble seeing" and gets dizzy.  She also experiences pain and numbness in her

2   legs.  AR 261.  She continues to suffer from depression and takes medication prescribed by

3   physicians at the Visalia Health Clinic.  AR 261-262.

4         With specific regard to her depression, Plaintiff has trouble sleeping because she suffers

5   from nightmares brought on by abdominal pain.  AR 262.  In her nightmares, she "sees a lot of

6   blood[]" and fighting.  AR 263.  She feels dizzy, does not eat well and has little energy.  AR 263.

7   Plaintiff was not certain whether she had lost weight or not.  AR 263.  She could not maintain

8   attendance at a job.  AR 263.  She has difficulty keeping appointments because she "keep[s]

9   forgetting."  AR 264.

10         Plaintiff's husband does not work and the family is supported by welfare.  She and her

11   husband have five children.  AR 264.

12         When asked about her previous employment as a packer by the ALJ, Plaintiff

13   acknowledged she last worked in that position in 2004, rather than 1994.  AR 264-265.  Plaintiff

14   denied working as a sewing machine operator, but did work for a temporary service.  AR 265.

15   She indicated she would be sent to perform "easy work" like the sock packaging position.  AR

16   265.  While performing this type of work, the most Plaintiff would lift is "less than five pounds."

17   AR 265-266.  As of the date of the hearing, Plaintiff believed she could lift and carry ten pounds.

18   AR 266.  The sock packaging position was performed in a standing, rather than seated, position.

19   AR 266.  Plaintiff can sit about one hour, and could walk around less than one hour.  AR 266-

20   267.

21         Later, Plaintiff indicated she worked sewing blankets for a company from 1997 until

22   2000.  The heaviest item she had to lift in that position weighed less than a pound.  AR 268-269.

23         Plaintiff does not see a psychiatrist or psychologist for her depression.  AR 266.  The

24   medication she is taking does not have side effects, but it is not helpful.  AR 266.

25         During the day, Plaintiff stays home and lies on the bed.  She does not cook, nor shop for

26   groceries.  Her son does the grocery shopping.  She does not clean her home.  AR 267.

27         VE Chaparro testified that Plaintiff's past work packaging socks is the equivalent of a

28   hand packager, medium, unskilled work.  However, pursuant to Plaintiff's testimony, she

1 performed the job as light work.  AR 268.  Plaintiff's past work sewing blankets was as a sewing

2 machine operator I, light, semi-skilled work.  AR 269-170.

3      The VE was asked to assume a hypothetical worker of thirty-three years in age, literate,

4 with past relevant work experience as previously described.  The individual has a combination of

5 severe impairments and retains the residual functional capacity ("RFC") to lift and carry 100

6 pounds occasionally and fifty pounds frequently, can stand, walk and sit for six hours in an eight-

7 hour work day, has the ability to maintain attention, concentration, persistence and pace, relates

8 to and interacts with others, can adapt to usual changes in work setting and adhere to safety rules.

9 AR  270.  VE Chaparro indicated the hypothetical worker could perform Plaintiff's past work.

10 AR 270.

11      In a second hypothetical, VE Chaparro was asked to assume the same information

12 regarding the worker's age, education and experience, with an RFC to stand less than one hour,

13 walk about one hour, and sit about one hour in an eight-hour workday, with the ability to lift and

14 carry ten pounds at a maximum, with difficulty maintaining attention, concentration, persistence

15 and pace.  The VE indicated this hypothetical worker could not perform plaintiff's past work, nor

16 any other job in the national economy.  AR 271.

17      Plaintiff's counsel posed hypothetical questions as well.  Again the VE was asked to

18 assume a person of the same age, education and past work experience, who is not capable of

19 managing funds, has a low intellectual function, is not able to perform simple repetitive or

20 detailed complex tasks due to severe depression, has difficulty accepting instructions from

21 supervisors and working with others, and could not maintain attendance in the workplace.  The

22 VE indicated such an individual could not perform Plaintiff's past work, nor was there any

23 available work in the national economy.  AR 271-272.

24      Asked to assume a moderate limitation of concentration, persistence and pace - moderate

25 being between mild and marked and affecting fifteen to thirty percent of an eight-hour workday -

26 the VE indicated such an individual could not perform work.  AR 272-273.

27 //

28 //

1    <u>Medical Record</u>

2         The entire record was reviewed by the Court, however, only those portions relevant to the

3    instant proceedings are briefly summarized below.

4         An ophthalmological examination of July 1, 2005, revealed visual acuity without glasses

5    at 20/200 in each eye and visual acuity of 20/60 with correction.  There was no evidence of

6    ocular or  neovascular disease.  AR 174-177.

7         Greg Hirokawa, M.D., performed a psychiatric evaluation of Plaintiff on July 3, 2005.

8    Plaintiff advised she suffered from headaches, abdominal pain, dizziness, chest pain and vision

9    problems.  She denied any stay in a psychiatric facility but reported she attempted suicide via

10   overdose in 1999.  AR 179.  The doctor noted Plaintiff's flat affect and withdrawn attitude.  AR

11   180.  There was no evidence of delusional thinking, auditory or visual hallucinations.  AR 180.

12   Dr. Hirokawa noted Plaintiff's "limited intellectual functioning."  He found she was not capable

13   of managing funds because she could not perform simple calculations, would not be able to

14   perform simple, repetitive tasks or detailed, complex tasks due to the severity of her depression.

15   She would have difficulty accepting instructions from supervisors and interacting with coworkers

16   for the same reason.  The doctor believed the likelihood Plaintiff would suffer from emotional

17   deterioration in the work place was high, and he did not believe she could maintain regular

18   attendance as a result of her depression and limited cognitive skills.  AR 181.  Dr. Hirokawa

19   concluded that Plaintiff suffers from a major depressive disorder; medication was recommended

20   to treat her symptoms.  AR 181-182.

21        A July 13, 2005, diagnostic report indicates a normal chest x-ray following Plaintiff's

22   complaints of dizziness and chest pain.  AR 240.

23        On July 30, 2005, Plaintiff underwent a comprehensive internal medicine evaluation by

24   Sarupinder Bhangoo, M.D.  AR 183-186.  Plaintiff reported chief complaints of vision problems,

25   dizziness and abdominal pain.  AR 183.  In the physical examination, Dr. Bhangoo noted that

26   Plaintiff did not open her eyes properly, "hence examination [was] somewhat difficult," yet he

27   found no vision problem.  AR 184.  Examination of her ears, nose, throat, neck, chest, and

28   abdomen were all normal.  Pulse, rate and rhythm were normal.  AR 184.  Coordination and gait

5

were normal, as were range of motion results.  AR 184-185.  Motor strength was 5 of 5 and

reflexes were 4 of 4.  AR 185.  Regarding Plaintiff's complaints of vision problems, Dr. Bhangoo

believed she was malingering as she had no difficulty making eye contact, or following the

examiner's instruments.  Additionally, Plaintiff claimed her vision had been a problem for two

years, yet she was working through to November 2004, or less than a year prior to the exam.

Additionally, no diagnosis could be made based upon Plaintiff's claims of dizziness and

abdominal pain as the neurological and abdominal findings were negative.  AR 186.  Dr.

Bhangoo found Plaintiff could sit eight hours in an eight-hour workday, stand and walk eight

hours in an eight-hour workday, lift and carry fifty pounds frequently and 100 pounds

occasionally, without postural, manipulative, communicative or workplace limitation.  AR 186.

A psychiatric assessment performed by Archimedes Garcia, M.D., dated August 1, 2005,

noted mild limitation in the restriction of activities of daily living and in maintaining social

functioning, and moderate limitation in maintaining concentration, persistence and pace.  AR

187-200.  The assessment was reviewed and affirmed by Glenn Ikawa, M.D. on December 8,

2005.  AR 187.  A mental RFC assessment of that same date, also prepared by Dr. Garcia, found

no significant limitation in all areas with the exception of moderate limitation in the ability to

understand and remember detailed instructions, and ability to carry out detailed instructions.  It

was noted Plaintiff could sustain simple repetitive tasks with adequate pace and persistence and

could adapt and relate to supervisors and coworkers.  AR 201-204.

On August 12, 2005, state agency physician E. Wong, M.D., reviewed Plaintiff's medical

records and determined her physical impairments were non-severe.  AR 208.

On September 14, 2005, ultrasounds of the abdomen and pelvis were performed.  The

liver, spleen, gallbladder, pancreas, and kidneys were all normal.  AR 222.  Two small cysts were

present in the right ovary, believed to be benign.  Otherwise, the results were normal.  AR 222-

223.

On October 19, 2006, Plaintiff complained of headache and dizziness and left side

stomach pain.  A CT scan was ordered.  AR 221.

//

1   An October 27, 2006, CT scan of Plaintiff's head revealed no abnormality.  AR 220.

2   On December 18, 2006, Plaintiff complained of back and stomach pain.  An ultrasound of

3   the pelvis was ordered.  AR 219.

4   A December 27, 2006, diagnostic report of the lower abdomen revealed two simple cysts

5   in the right ovary; no other abnormality or cause for abdominal discomfort was found.  AR 218.

6   **ALJ's Findings**

7   The ALJ determined that Plaintiff has the severe impairment of a major depressive

8   disorder.  Nonetheless, the ALJ determined the severe impairment did not meet or equal any

9   listing impairment so as to result in a disability finding.  AR 34-35.

10   Based on his review of the medical evidence, the ALJ determined that Plaintiff retained

11   the RFC to frequently lift and carry fifty pounds, and could occasionally lift and carry 100

12   pounds, could stand and walk for six hours in an eight-hour workday, and could sit for six hours

13   in an eight-hour workday.  AR 35.  The ALJ determined that Plaintiff could perform the full

14   range of unskilled work.  AR 37.

15   Given this RFC, the ALJ found that Plaintiff could return to her past relevant work as a

16   sorter and sewing machine operator.  Thus, the ALJ determined Plaintiff was not disabled.  AR

17   37.

18   **SCOPE OF REVIEW**

19   Congress has provided a limited scope of judicial review of the Commissioner's decision

20   to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

21   the Court must determine whether the decision of the Commissioner is supported by substantial

22   evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla,"

23   *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

24   *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

25   reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

26   401.  The record as a whole must be considered, weighing both the evidence that supports and

27   the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

28   995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).
This Court must uphold the Commissioner's determination that the claimant is not disabled if the
Secretary applied the proper legal standards, and if the Commissioner's findings are supported by
substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th
Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in
substantial gainful activity due to a medically determinable physical or mental impairment which
has lasted or can be expected to last for a continuous period of not less than twelve months.  42
U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of
such severity that he is not only unable to do his previous work, but cannot, considering his age,
education, and work experience, engage in any other kind of substantial gainful work which
exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).
The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th
Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated
regulations which contain, inter alia, a five-step sequential disability evaluation process.  20
C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).  This five-step analysis can be summarized as
follows: (1) determination of whether the claimant is engaged in substantial gainful activity; if so
engaged, the claimant is not presumed disabled and the analysis ends; (2) if not engaged in
substantial gainful activity, determination of whether the claimant has a severe impairment; if
not, the claimant is not presumed disabled and the analysis ends; (3) if the claimant has a severe
impairment, determination of whether any such severe impairment meets any of the impairments
listed in the regulations; if so, the claimant is disabled and the analysis ends; (4) if the claimant's
impairment is not listed, determination of whether the impairment prevents the claimant from
performing his or her past work; if not, the claimant is not presumed disabled and the analysis
ends; and (5) if the impairment prevents the claimant from performing his or her past work,

1  determination of whether the claimant can engage in other types of substantial gainful work that

2  exist in the national economy; if so, the claimant is not disabled and the analysis ends.

3  **DISCUSSION**

4  Plaintiff asserts the following arguments: (1) ALJ Berry is biased against Plaintiff's

5  counsel, Jeffrey Milam to the detriment of Plaintiff; (2) the RFC finding is not supported by

6  substantial evidence and the ALJ erred by failing to perform a function-by-function RFC

7  assessment; (3) the ALJ failed to properly evaluate Plaintiff's pain complaints; and (4) the ALJ

8  erred by failing to recontact the consultative examiners.  The Court will address each argument in

9  turn.

10  **A.     *The Alleged Bias of ALJ Berry***

11  Plaintiff argues that because ALJ Berry was found to be biased in a previous matter  by

12  this Court, wherein it was suggested that ALJ Berry should give serious consideration to recusing

13  himself from future claims involving Plaintiff's counsel (Mr. Milam) in order to avoid the

14  appearance of impropriety, that he was therefore biased in the present case thus requiring either

15  reversal or remand.  In support of this position, Plaintiff has extensively quoted from the opinion

16  in *Hixson v. Astrue*, 1:06-cv-00353-OWW-DLB.

17  When faced with a claim of bias, the Court must start with the presumption that

18  administrative adjudicators are unbiased and that they exercise their decision-making authority

19  with honesty and integrity.  *See Schneider v. McClure*, 456 U.S. 188, 195-196 (1982); *Withrow v.*

20  *Larkin*, 421 U.S. 35, 47 (1975); *Rollins v. Massanari*, 261 F.3d 853, 857-58 (9th Cir. 2001)

21  (citing *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999)).  This presumption can be

22  rebutted by a showing of a conflict of interest or by showing some other specific reason for

23  disqualification.  *Schneider*, 456 U.S. at 195.  The burden of overcoming this presumption rests

24  with the Plaintiff.  *Id.* at 196.  As stated in *Rollins*, Plaintiff must establish "the ALJ's behavior,

25  in the context of the whole case, was so extreme as to display clear inability to render fair

26  judgment." *Rollins v. Massnari*, 261 F.3d at 858 (internal quotation marks omitted).

27

28

1    Here, ALJ Berry is presumed to be unbiased.  *Schneider v. McClure*, 456 U.S. at 195-196.

2    Plaintiff has failed to establish any evidence of bias in the context of this particular case.

3    Plaintiff would apparently have this Court reverse and remand ALJ Berry's findings in any case

4    involving Mr. Milam's representation of the claimant based merely on the existence of the

5    *Hixson* decision.  This is completely contrary to the prevailing authority.  More importantly, this

6    case has none of the contentious behavior identified in the *Hixson* matter.  The exchanges

7    between all parties at the April 30, 2007, hearing were completely professional and pleasant.  *See*

8    AR 254-274.  ALJ Berry did not exhibit any behavior here "so extreme as to display clear

9    inability to render fair judgment."  *Rollins v. Massanari*, 261 F.3d at 858.  There is nothing in the

10   instant record to indicate that ALJ Berry exercised his decision-making authority in the absence

11   of honesty and integrity.  *Schneider*, at 195-196; *Rollins*, at 857-858.

12   Notably too, ALJ Berry conducted the hearing in this matter on April 30, 2007.  AR 254.

13   Yet the *Hixson* findings are dated September 14, 2007, and judgment was entered October 5,

14   2007.  Plaintiff's broad-sweeping claims that ALJ Berry's bias toward Mr. Milam "was there all

15   along" and that the purported bias "is not a one-time thing" do not overcome the presumption

16   that administrative adjudicators are unbiased and act with honesty and integrity.

17   Plaintiff's references to various statistics regarding ALJ Berry's findings in the matters

18   handled by counsel's office compared to national averages are likewise unavailing.  The

19   information is irrelevant to this particular case and is therefore insufficient to establish bias.

20   In sum, Plaintiff has failed to overcome the presumption that an administrative

21   adjudicator is unbiased.  ALJ Berry rendered fair judgment.  Morever, the Court will not presume

22   bias simply because it previously determined this particular ALJ was biased in another matter.

23   //

24   //

25   **B.    *Function-By-Function RFC Assessment & Substantial Evidence***

26   Plaintiff contends the ALJ failed to identify the restrictions in her work-related abilities

27

28

1  on a function-by-function basis as required by Social Security Ruling 96-8p.  Additionally,

2  Plaintiff asserts the ALJ failed to fully and fairly review the evidence and record as a whole.

3  (Doc. 25 at 15-17.)  The Commissioner responds that the ALJ's findings were proper and

4  supported by substantial evidence.  (Doc. 29 at 10-13.)

5       The RFC assessment describes an adjudicator's finding about the ability of a claimant to

6  perform work-related activities.  SSR 96-5p.  The ALJ has the responsibility to make findings of

7  fact concerning a claimant's RFC based on an assessment primarily made by a medical source.

8  20 C.F.R. §§ 404.1526, 416.946.  In addition, the ALJ must consider all of the relevant evidence,

9  including medical records, lay evidence, and "'the effects of symptoms, including pain, that are

10 reasonably attributed to a medically determinable impairment.'"  *Robbins v. Social Sec. Admin.*,

11 466 F.3d 880, 883 (9th Cir. 2006) (quoting SSR 96-8p).

12      The RFC requires the ALJ to consider a claimant's ability to meet certain job demands,

13 such as physical demands, mental demands, sensory requirements, and other functions.  20

14 C.F.R. §§ 404.1545(a), 416.945(a).  As such, an assessment of the claimant's exertional

15 limitations (sitting, standing, walking, lifting and carrying abilities) and non-exertional

16 limitations (postural and manipulative abilities and mental capacity) is required.  SSR 96-8p.

17 Social Security Ruling 96-8p requires the RFC to identify a claimant's functional limitations or

18 restrictions and assess his or her work-related abilities on a function-by-function basis.  This

19 includes the functions related to the claimant's physical abilities, mental abilities, and any other

20 abilities affected by the claimant's impairment or impairments.  20 C.F.R. §§ 404.1545(b)-(d);

21 416.945(b)-(d).  Pursuant to the narrative discussion requirement provided in SSR 96-8, the RFC

22 assessment must contain a "thorough discussion and analysis" of the objective medical and other

23 evidence, including pain, and a "logical explanation of the effects of these symptoms on the

24 individual's ability to work."  SSR 96-8.

25      Here, the ALJ found as follows:

26          The claimant testified that she is disabled due to depression, nightmares,
           poor energy and inability to focus. She states that she stays home and spends her

27

28

time in bed.  She currently is prescribed a low dose of Elavil.

After considering the evidence of record, I find that the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

In July 2005, the claimant had a consultative examination by Greg Hirokawa, M.D., for complaints of feelings of depression and anger and reports that she had "bad kids."  She also told Dr. Hirokawa she quit working in November 2004 due [to] dizziness.  Mental status examination revealed her mood appeared depressed.  Her affect was flat, but she denied suicidal ideation.  The claimant's speech and articulation were clear.  Thought content appeared appropriate.  She was fully oriented.  Remote memory was intact based on her ability to recall various events in her life.  He noted occupational and economic stressors.  In a functional assessment, Dr. Hirokawa stated the claimant will not be able to perform simple, repetitive tasks.  She will have difficulties accepting instructions from supervisors and interacting with coworkers and maintaining regular attendance based upon his examination.  Archimedes Garcia, M.D. and Glenn Ikawa, M.D., two psychiatrists of the State Agency who analyzed the evidence, concluded the claimant is able to perform simple and repetitive tasks.

As for the opinion evidence, little weight is given Dr. Hirokawa's opinion as there is evidence the claimant malingered in both medical and ophthalmological examinations.  Also, her presentation to Dr. Hirokawa is not credible based on the absence of any evidence of psychiatric or psychological therapy.  Moreover, the claimant reported few vegetative symptoms of depression. She stated she quit work in November 2004 due to dizziness, not depression. However, the claimant told Dr. Bhangoo she quit work because she was laid off due to vision problems.  The opinion of Dr. Bhangoo is given great weight with respect to the exertional limitations, but not the capacity to lift/carry.  I ascribe the claimant the capacity to frequently lift/carry 50 pounds and occasionally 100 pounds.  Therefore, the conclusions of the two State Agency psychiatrists are given great weight as consistent with the objective medical evidence.

In summary, the claimant's depression disorder and disabling limitations are not supported by the objective evidence - to the extent alleged.  She is prescribed a non-therapeutic dosage of Elavil, not consistent with a chronic and disabling depressive disorder.  The claimant has not sought any psychiatric or psychological therapy.  She had not participated in a Southeast Asian support group.  Her treating physician has not referred her to a psychiatrist. The claimant's credibility is poor as Dr. Bhangoo believed she was malingering and she gave contradicting reasons for quitting work.  Her depressed mood appears to be based on economic and occupational stressors.  Her depressive disorder warrants a limitation to simple and repetitive tasks.  The record supports a residual functional capacity for a full range of unskilled work.

AR 36-37, internal citations omitted.

//

Plaintiff's argument is  unpersuasive. The ALJ assessed Plaintiff's exertional limitations

(sitting, standing, walking, lifting and carrying abilities) and non-exertional limitations (postural

1   and manipulative abilities and mental capacity) and mental abilities as required.  The ALJ's

2   findings contain a thorough discussion and analysis and a logical explanation as required by SSR

3   96-8.

4         The opinions of non-treating physicians are substantial evidence where they are supported

5   by clinical findings and objective tests.  *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.

6   1989).  When the ALJ rejects the opinion of an examining physician in reliance on the non-

7   examining physician, "reports of the nonexamining advisor need not be discounted and may

8   serve as substantial evidence when they are supported by other evidence in the record and are

9   consistent with it."  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *Saelee v. Chater*, 94

10  F.3d 520, 522 (9th Cir. 1996).  Here, Dr. Garcia's report is supported by and consistent with

11  other evidence in the record.  Dr. Hirokawa's report indicates that the doctor considered the

12  possibility his findings were also affected by "cultural issues, . . . [and] family issues with limited

13  resources and social support."  AR 181.  The report does not contain objective evidence of

14  cultural issues or family issues.

15        Additionally, as pointed out by the Commissioner, Plaintiff's treating physician did not

16  refer her to a psychiatrist or psychologist for treatment of her depression.  AR 211-212, 216-217,

17  219, 221, 224-232, 234-235, 241.  At the hearing, Plaintiff testified she had never been treated by

18  psychiatrist or psychologist.  AR 266.  An ALJ may properly consider a treating physician's

19  failure to suggest or prescribe additional treatment and a claimant's failure to request the

20  treatment.  *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (citing *Bunnell v. Sullivan*,

21  947 F.2d 341, 346 (9th Cir. 1991).

22  //

23  //

24  //

25

26        **C.    *Pain and Credibility Findings***

27

28

1        Plaintiff argues "the ALJ's reasons for rejecting the symptom testimony" are neither clear

2   nor convincing.  (Doc. 25 at 18-19.)  The Commissioner responds the ALJ properly considered

3   Plaintiff's subjective complaints and thus no error occurred.  (Doc. 29 at 13-14.)

4        In *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit summarized the

5   pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's

6   subjective complaints:

7           An ALJ is not "required to believe every allegation of disabling pain" or
    other non-exertional impairment.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th

8   Cir.1989).  However, to discredit a claimant's testimony when a medical
    impairment has been established, the ALJ must provide "'specific, cogent reasons

9   for the disbelief.'"  *Morgan*, 169 F.3d [595,] 599 [(9th Cir. 1995)] (quoting *Lester
    [v. Chater]*, 81 F.3d [821,] 834 [(9th Cir. 1995)]).  The ALJ must "cit[e] the

10  reasons why the [claimant's] testimony is unpersuasive."  *Id.*  Where, as here, the
    ALJ did not find "affirmative evidence" that the claimant was a malingerer, those

11  "reasons for rejecting the claimant's testimony must be clear and convincing."  *Id.*
            Social Security Administration rulings specify the proper bases for

12  rejection of a claimant's testimony. . ..  An ALJ's decision to reject a claimant's
    testimony cannot be supported by reasons that do not comport with the agency's

13  rules.  *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have
    the same force and effect as the statute or regulations, they are binding on all

14  components of the Social Security Administration, ... and are to be relied upon as
    precedents in adjudicating cases."); *see also Daniels v. Apfel,* 154 F.3d 1129, 1131

15  (10th Cir.1998) (concluding that ALJ's decision at step three of the disability
    determination was contrary to agency regulations and rulings and therefore

16  warranted remand).  Factors that an ALJ may consider in weighing a claimant's
    credibility include reputation for truthfulness, inconsistencies in testimony or

17  between testimony and conduct, daily activities, and "unexplained, or
    inadequately explained, failure to seek treatment or follow a prescribed course of

18  treatment."  *Fair*, 885 F.2d at 603; *see also Thomas [v. Barnhart]*, 278 F.3d
    [947,] 958-59 [(9th Cir. 2002)].

19

20  *Orn,* at 635-36.

21       The ALJ is required to make specific findings assessing the credibility of plaintiff's

22  subjective complaints.  *Ceguerra v. Secretary of Health & Human Services*, 933 F.2d 735, 738

23  (9th Cir. 1991).  "An ALJ is not 'required to believe every allegation of disabling pain' or other

24  non-exertional impairment," *Orn v. Astrue*, 495 F.3d at 635 (citation omitted).  In rejecting the

25  complainant's testimony, "the ALJ must identify what testimony is not credible and what

26  evidence undermines the claimant's complaints."  *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.

27

28

1   1995) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir.

2   1988)).  Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the

3   severity of her pain and impairments is unreliable, the ALJ must make a credibility determination

4   with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

5   discredit claimant's testimony.  *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).  "The

6   ALJ may consider at least the following factors when weighing the claimant's credibility:

7   '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or

8   between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and

9   testimony from physicians and third parties concerning the nature, severity, and effect of the

10  symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789,

11  792 (9th Cir. 1997)).  "If the ALJ's credibility finding is supported by substantial evidence in the

12  record, we may not engage in second-guessing." *Id.*

13      Here, the ALJ clearly identified what testimony was not credible and what evidence

14  undermined Plaintiff's complaints regarding depression.  He noted a low dose of anti-depressant

15  medication, the evidence of malingering (*Thomas v. Barnhart*, 278 F.3d at 959 [claimant failed

16  to give maximum or consistent effort during physical examination]), the discrepancy by Plaintiff

17  regarding the reason she left employment (*Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir.

18  1995) [claimant's credibility discredited due to contradictory statements]), lack of any psychiatric

19  or psychological care (*Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) [claimant's failure

20  to seek or follow prescribed treatment is a proper basis for finding her allegations of disabling

21  pain and other symptoms not credible]), and lack of participation in a Southeast Asian support

22  group.  AR 36; *see also Lester v. Chater*, 81 F.3d at 834.[3]

23  ─────────────────

24      [3]In a Work History report completed for Plaintiff's by Al Chai See, Plaintiff indicated that in her previous employment "sewing bed spray cover materials," the "heaviest weight" she lifted was "100 lbs or more" and that she

25  "frequently lifted . . . 50 lbs or more."  AR 108.  In her previous position "sewing pattern/material," Plaintiff answered identically.  AR 109.  With regard to her position "sorting socks," Plaintiff indicated the "heaviest weight"

26  she lifted was "50 lbs or more," and that she "frequently lifted . . . 50 lbs or more."  AR 110.  This is clearly contrary

27  to her testimony at the time of the hearing.

28

1      The ALJ's reasons for his finding are specific and cogent.  *Orn v. Astrue*, 495 F.3d at

2  635.  The ALJ was not required to accept Plaintiff's testimony as a whole.  *Ibid*.  His reasons are

3  clear and convincing, rather than arbitrary.  *Lester v. Chater*, 81 F.3d at 834; *Thomas v.*

4  *Barnhart*, 278 F.3d at 958.  ALJ Berry was not required to believe every allegation of pain by

5  Plaintiff.  *Orn v. Astrue*, 495 F.3d at 635.

6      It is not the role of the Court to redetermine Plaintiff's credibility de novo.  Although

7  evidence supporting an ALJ's conclusions might also permit an interpretation more favorable to

8  the claimant, if the ALJ's interpretation of evidence was rational, as here, the Court must uphold

9  the ALJ's decision where the evidence is susceptible to more than one rational interpretation.

10  *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

11      For the reasons stated above, the Court finds that the ALJ set forth sufficient reasons to

12  allow the Court to conclude that he did not arbitrarily discredit Plaintiff's subjective complaints.

13  Accordingly, Plaintiff's claim must be denied.

14      **D.**      ***The Consultative Examiners***

15      Plaintiff argues the ALJ erred by failing to "recontact" consultative examiners Hirokawa,

16  Bhangoo and Waters.  (Doc. 25 at 20-21.)  In response, the Commissioner contends Plaintiff

17  failed to raise the issue below, and in any event, the ALJ had no obligation to more fully develop

18  the record.  (Doc. 29 at 14-15.)

19      As a preliminary matter, Plaintiff was represented by counsel.  Counsel made no effort to

20  seek to "recontact" the consultative examiners, nor did he ask the ALJ to do so.  AR 256-274.

21  This undermines Plaintiff's argument that the record was ambiguous.

22      In general it is the duty of the claimant to prove to the ALJ that she is disabled.  20 C.F.R.

23  § 404.1512(a).  To this end, she must bring to the ALJ's attention everything that supports a

24  disability determination, including medical or other evidence relating to the alleged impairment

25  and its effect on her ability to work.  *Id.*  For his part, the ALJ has the responsibility to develop "a

26  complete medical history" and to "make every reasonable effort to help [the plaintiff] get medical

27

28

reports." 20 C.F.R. § 404.1512(d).   If this information fails to provide a sufficient basis for
making a disability determination, or the evidence conflicts to the extent that the ALJ cannot
reach a conclusion, he may seek additional evidence from other sources. 20 C.F.R. §§
404.1512(e);  404.1527(c)(3); *see also Mayes v. Massanari*, 262 F.3d 963, 968 (9th Cir.2001).

However, the ALJ's obligation to obtain additional evidence is triggered only "when the
evidence from the treating medical source is inadequate to make a determination as to the
claimant's disability." *Thomas v. Barnhart*, 278 F.3d at 958; *Tonapetyan v. Halter*, 242 F.3d
1144, 1150 (9th Cir. 2001) (holding that ALJs have a duty fully and fairly to develop the record
when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of
the evidence). When the ALJ finds support in the record adequate to make a determination
regarding the claimant's disability, he does not have a duty to contact the doctors." *Bayliss v.
Barnhart*, 427 F. 3d 1211, 1217 (9th Cir. 2005).

It is plain that ALJ Berry properly determined the record before him was adequate to
make a determination regarding Plaintiff's disability.  He discussed with particularity the reports
of Drs. Hirokawa, Bhangoo, and Waters.

A review of Dr. Hirokawa's report indicates the doctor reviewed unidentified "records"
and "a Disability report."  AR 178.  While Plaintiff's mood was depressed and her affect flat, her
general appearance and behavior, content of thought, and memory were all normal. Plaintiff was
asked to name three Presidents of the United States, the capital and the Governor of California,
but she was unable to answer the inquiries.  She could not perform simple math, but could
perform a simple three-step command.  Dr. Hirokawa believed Plaintiff to be of limited
intellectual function but specifically stated this finding could be "due to cultural issues."  Despite
the ALJ's ultimate assessment of Dr. Hirokawa's findings, the record does not establish that the
ALJ was left with an inadequate record.

A review of Dr. Bhangoo's report and its objective findings reveals that despite her
claims of visions problems, Plaintiff was "able to find the chair and sit on it and does not seem to

be stumbling.  She is able to move around well and does not seem to be suffering from any vision

problems, though she says she cannot recognize the examination room."  AR 184.  The external

eye examination was normal and despite Plaintiff's failure to "open her eyes properly," the

extraocular movements were full, and the sclerae clear.  AR 184.  The doctor believed Plaintiff

was malingering because she was able to follow voice commands, made good eye contact,

including eye contact with the examiner's tools.  AR 186.  Dr. Bhangoo's examination revealed

absolutely no basis for Plaintiff's complaints of dizziness and abdominal pain.  AR 184-185.

Because Dr. Bhangoo's objective findings did not support Plaintiff's claims regarding either the

visions problems or the dizziness and abdominal pain, he determined Plaintiff was capable of

sitting, standing and walking eight hours in an eight-hour work day, with the ability to

occasionally lift 100 pounds and frequently lift fifty pounds, without limitation regarding posture,

manipulation, communication or environment.  AR 186.  The ALJ was not faced with inadequate

information so as to require additional information.

A review of Dr. Waters' report shows normal examination findings, no evidence of

ocular disease or neovascular disease, and an indication that no significant visual field deficit was

expected.  Dr. Waters indicated that Plaintiff's alleged visual acuity was not consistent with the

degree of pathology.  AR 174-177.  Again, the record establishes that the ALJ was not faced with

an inadequate record.

There is no ambiguity in the record here that would not permit a proper evaluation of the

evidence.   Thus, no error occurred.

//
//
//
//

**CONCLUSION**

1   The ALJ's findings are supported by substantial evidence and the proper legal standards

2   were applied.  *Richardson v. Perales*, 402 U.S. at 401-402; *Sanchez v. Sec'y of Health and*

3   *Human Serv.*, 812 F.2d at 510.  Thus, this Court will uphold the determination that Plaintiff is

4   not disabled.

5                                    **RECOMMENDATION**

6          Based on the foregoing, the Court finds that the ALJ's decision is supported by

7   substantial evidence in the record as a whole and is based on proper legal standards.

8   Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision

9   of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for

10  Defendant Michael J. Astrue and against Plaintiff Tong See.

11         These findings and recommendations will be submitted to the Honorable Lawrence J.

12  O'Neill pursuant to the provisions of Title 28 of the United States Code section 636(b)(l).

13  Within fifteen (15) days after being served with these findings and recommendations, the parties

14  may file written objections with the Court.  The document should be captioned "Objections to

15  Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file

16  objections within the specified time may waive the right to appeal the District Court's order.

17  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

18

19         IT IS SO ORDERED.

20  **Dated:   December 23, 2009**              _____/s/ **Gary S. Austin**_____
                                               UNITED STATES MAGISTRATE JUDGE

19